Levi Y. Eidelman (NJ Bar No. 388242021)
**CONSUMER ATTORNEYS**
300 Cadman Plaza West, 12th Floor, Suite 12049
Brooklyn, NY 11201
T: (718) 360-0763
E: leidelman@consumerattorneys.com

*Attorneys for Plaintiff John Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>vs.<br><br>ORACLE SCREENING SERVICES, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against Oracle Screening Services, Inc. ("Defendant" or "Oracle") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report wherein Defendant published to Plaintiff's potential employer adverse information that otherwise should have been excluded from the employment purposed consumer report.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and

furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant improperly published adverse information about Plaintiff that should have been excluded from the employment purposed consumer report.

4. Specifically, Defendant continued to report a criminal record involving Plaintiff that was otherwise expunged.

5. Plaintiff's prospective employer ordered an employment purposed report about Plaintiff from Defendant. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, wherein Defendant published expunged criminal cases that otherwise should have been excluded from the report.

6. Defendant does not employ reasonable procedures to assure maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

7. Specifically, Defendant does not employ reasonable procedures to exclude expunged cases from consumer reports that it sells to employers.

8. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

9. Defendant's inaccurate report cost Plaintiff a good paying job and job security that would have come with the job he was to be offered by the prospective employer.

10. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time

and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

12. John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Middlesex County, New Jersey, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant Oracle Screening Services, Inc. ("Defendant" or "Oracle") is a Texas corporation doing business throughout the United States, including the State of New Jersey and in this District, and has a principal place of business located at 8765 Stockard Drive, Suite 104, Frisco, Texas 75034.

14. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**STATUTORY BACKGROUND**

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

**THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

22. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

23. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

24. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

28. Under 15 U.S.C. §1681c(a), consumer reporting agencies are required to exclude from consumer reports adverse information, other than records of convictions of crimes which antedate the report by more than seven years.

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### A. Plaintiff Applies for Work with Double Diamond

41. In or around November 2023, Plaintiff applied for full-time employment with Double Diamond Companies.

42. Upon applying to Double Diamond, Plaintiff successfully completed an in-person interview, and other application requirements attendant to becoming a successful candidate for a Double Diamond position.

43. The Double Diamond employment position offered $18 dollars per hour.

44. On or about November 2023, Double Diamond extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

**B. Defendant Published an Inaccurate Background Check Report to Double Diamond**

45. Double Diamond contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

46. On or about November 29, 2023, Double Diamond ordered a criminal background check on Plaintiff from Defendant.

47. On November 29, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Double Diamond.

48. Within that employment report, Defendant published adverse information about Plaintiff that otherwise should have been excluded from the report because the reported criminal records were expunged.

49. Specifically, Defendant's employment report about Plaintiff included criminal records that had been expunged. Accordingly, Defendant published to Plaintiff's prospective employer adverse information that otherwise should have been excluded because the reported records had been expunged.

50. The sole reason the adverse information that otherwise should have been excluded was included in the employment purposed consumer report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

51. Had Defendant followed reasonable procedures, it would have discovered that the criminal records it was reporting about Plaintiff were expunged and therefore should not have reported the same.

52. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer adverse information that otherwise should have been excluded because the criminal records it reported about Plaintiff were expunged, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**C. Double Diamond Denies Plaintiff's Job Application**

53. On December 5, 2023, Plaintiff contacted Double Diamond to inquire about the status of his employment application.

54. Plaintiff's prospective supervisor with whom Plaintiff had been in communication informed Plaintiff that his employment application was denied because Plaintiff "lied on the back [sic] ground check and didn't pass."

55. However, Plaintiff did not lie on his background check.

56. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing expunged criminal records contained within the subject employment report that should not have been included in that report.

57. Plaintiff communicated to Double Diamond and informed them that Defendant's background report about him was inaccurate, because such records should not be reporting on his background check.

58. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting of his expunged record, both in relation to the Double Diamond position, but also the impact of the same on his future.

59. Specifically, Defendant published an inaccurate employment-purposed consumer report about Plaintiff wherein it reported expunged, and non-existent, criminal records when it should not have reported the same.

**D. Plaintiff Disputed the Disinformation in Defendant's Employment Report**

60. On December 5, 2023, desperate to secure employment with Double Diamond and riddled with worry over the far-reaching impact of the inaccurate information in his background report, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

61. In particular, Plaintiff called Defendant on December 5, 2023, identified himself and provided information to Defendant to support his dispute.

62. Plaintiff specifically disputed the reporting of his expunged criminal records that should not have been reported at all.

63. Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

64. Soon thereafter, Plaintiff received Defendant's correspondence dated December 6, 2023, confirming that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by correcting the reporting of the criminal records and excluding the expunged information from the report.

65. Indeed, Defendant's post-dispute, revised consumer report that Plaintiff reviewed conveyed, accurately, that its record searches reflected the absence of ***any*** criminal records in Plaintiff's background.

66. Plaintiff does not know whether Defendant issued a corrected employment report to Double Diamond.

67. Plaintiff never heard back from Double Diamond regarding his application for employment.

68. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Double Diamond formed a negative opinion about Plaintiff and/or moved on to other candidates, especially given what his prospective supervisor at Double Diamond told him, namely, that Plaintiff had "lied" about his record.

69. Plaintiff did not lie about his record, but Defendant's publishing expunged information about Plaintiff created the false impression to Plaintiff's prospective employer that Plaintiff had lied, which was not true, but nonetheless cost Plaintiff the job he wanted.

70. Defendant's false report cost Plaintiff a promising, secure, and well-paying job with Double Diamond.

71. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff has had difficulty finding employment.

72. After being denied by Double Diamond, Plaintiff continued his search for employment, but, despite diligent efforts, has not been successful in securing alternative employment.

73. Further, since being denied the Double Diamond position and because of that denial, Plaintiff struggled to keep up with his financial obligations, and he fell behind on monthly payments.

74. Crucially, Plaintiff fell behind on his housing payments, car insurance payments, phone bill payments, and his daughter's tuition payments.

75. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

76. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

77. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

78. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

79. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

80. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

81. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

82. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

83. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681c(a)**
**Failure to Exclude Adverse Non-Conviction Information that Antedated the Report by More Than Seven Years**

85. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

86. Within its consumer report about Plaintiff, Defendant failed to exclude at least one adverse record which antedated the report by more than seven years.

87. Multiple of the expunged records that Defendant published – each of them non-existent records due to an order of expungement – have disposition dates earlier than August 2016 and offense dates that occurred earlier still. Thus, by the time Defendant published a background report concerning Plaintiff in November 2023, those non-existent records antedated the report by more than seven years.

88. Such antedated, non-conviction information is information that Congress deemed to be obsolete and for that reason, should be excluded from consumer reports.

89. The FCRA prohibits consumer reporting agencies from "mak[ing] any consumer report" that contains "[a]ny [] adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5).

90. In violation of Section 1681c(a)(5), Defendant made an employment-based consumer report that contained non-conviction, adverse information which antedated the report by more than seven years.

91. In particular, Defendant published to Double Diamond, in a consumer report, two criminal offense records concerning Plaintiff that were not convictions, but rather had been expunged and were no longer existing as convictions.

92. Further, the two criminal offense records have disposition dates dated earlier than August 2016 and offense dates that occurred earlier still. Thus, by the time Defendant published a background report concerning Plaintiff in November 2023, those non-existent records antedated the report by more than seven years.

93. Upon information and belief, all of the criminal records reported by Defendant in a consumer report to Double Diamond concerning Plaintiff had offense dates dated earlier than August 2016. Thus, by the time Defendant published a background report concerning Plaintiff in November 2023, those records were non-convictions that antedated the report by more than seven years.

94. Defendant knew or had reason to know that it was prohibited by the FCRA from publishing the adverse, non-conviction record information and should have excluded them because they were non-conviction record which antedated the report by more than seven years.

95. Defendant violated 15 U.S.C. § 1681c(a)(5) by reporting adverse, non-conviction records that antedated the report by more than seven years.

96. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

97. Defendant willfully violated 15 U.S.C. § 1681c(a) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

98. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c) Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: February 26, 2024,

*/s/ Levi Y. Eidelman*
Levi Y. Eidelman (NJ Bar No. 388242021)
**CONSUMER ATTORNEYS**
300 Cadman Plaza West, 12th Floor, Suite 12049
Brooklyn, NY 11201
T: (718) 360-0763
E: leidelman@consumerattorneys.com

*Attorneys for Plaintiff John Doe*